**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ROBERTA O. OLAKA, | ) | |
| ID # 43776-177, | ) | |
|         Movant, | ) | No. 3:12-CV-4281-O-BH |
| vs. | ) | No. 3:11-CR-0360-O (02) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|         Respondent. | ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, movant's second amended *Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody,* filed February 19, 2013 (doc. 11), should be **DENIED** with prejudice, and her *Motion to Dismiss IAC Claim Pertaining to Direct Appeal*, filed June 25, 2013 (doc. 22), should be **GRANTED**.

**I.  BACKGROUND**

Roberta O. Olaka (Olaka) challenges her federal conviction and sentence in Cause No. 3:11-CR-360-O(2). The respondent is the United States of America (Government).

**A.**   **Plea and Sentencing**

Olaka was charged by superseding indictment with: 1) mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (count one); 2) conspiracy to aid and assist in the preparation and presentation of false and fraudulent individual income tax returns in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(2) (count two); 3) aiding and assisting in the preparation and presentation of false and fraudulent individual income tax returns in violation of 26 U.S.C. § 7206(2) (counts three through ten); and 4)

tax evasion in violation of 26 U.S.C. § 7201 (counts fourteen through sixteen). (*See* doc. 26.)[1] On March 29, 2012, she pled guilty pursuant to a plea agreement to tax evasion, as alleged in count sixteen of the indictment. (*See* docs. 42, 43, 46.) In the plea agreement, she waived the right to contest her conviction and sentence in any direct appeal or collateral proceeding, except to bring a direct appeal challenging her sentence as either exceeding the statutory maximum punishment or having been calculated by way of an arithmetic error, or to challenge the voluntariness of her plea or waiver and to bring a claim of ineffective assistance of counsel. (doc. 42 at 4.) Olaka acknowledged this waiver during the rearraignment hearing. (doc. 66 at 17-19.) She also signed a factual resume admitting facts sufficient to support her guilty plea. (*See* doc. 43.)

The probation office prepared a pre-sentence report (PSR) that calculated her total offense level as 25, after a three-level downward departure for acceptance of responsibility, with a resulting guideline range of 57 to 60 months of imprisonment. (PSR ¶¶ 47-51, 96 (doc. 48).) At sentencing on August 2, 2012, the Court sustained the defense's objection to a two-level enhancement based on use of sophisticated means, overruled two other defense objections, and adopted the remainder of the PSR. This resulted in a sentencing guideline range of 46 to 57 months. (doc. 67 at 14, 18.) The Court sentenced Olaka to 46 months' imprisonment, to be followed by a two-year term of supervised release, and entered judgment. (*See* Judgment (doc. 62).) Olaka did not appeal her conviction or sentence.

Olaka initially sent a letter to the Court that was received on October 16, 2012, stating her concerns about her legal representation and her guilty plea. (doc. 64.) This letter was liberally construed as a § 2255 motion to vacate, and Olaka was ordered to either withdraw her

---

[1] Unless otherwise noted, all document numbers refer to the docket number assigned in the underlying criminal action.

correspondence or to file an amended motion on the appropriate form. (doc. 65.) She filed an amended motion to vacate on November 20, 2012. (*See* Amended Motion, 3:12-cv-4281-O (doc. 4).) On February 21, 2013, Olaka was granted leave to file a second amended § 2255 motion, and her second amended motion was filed on that date. (*See* Second Amended Motion (2d Am. Mot.), 3:12-cv-4281-O (doc. 11).)

**B.** **Substantive Claims**

In her second amended motion to vacate, Olaka asserts the following claims:

(1) her guilty plea was involuntary because:

–she was not fully informed about the consequences of the plea;

–her attorney promised her a sentence of between 24-30 months and that she would go home after sentencing;

–she did not receive a copy of her PSR until after she pled guilty and signed an acceptance of responsibility;

–and because she did not receive all of the pages of the plea agreement and was therefore not able to read it all (*Id.* at 7, 10-11);

(2) her trial attorney rendered ineffective assistance of counsel by:

–failing to adequately communicate with her;

–not attending her pre-sentence investigation interview with her;

–failing to discuss her PSR with her or give her a copy of it, but telling the district court that he had discussed it with her;

–not informing her that her sentencing date had changed; and

– failing to file a direct appeal on her behalf after she requested that he do so. (2nd Am. Mot. at 6, 12-15);

(3) the district court was without jurisdiction to impose her sentence (*Id.* at 7); and

(4) the sentence was in excess of the maximum authorized by law (*Id.* at 17).

The Government filed an initial response brief, with supporting affidavit, on January 28, 2013. (*See* Resp. to Mot. (Resp.), 3:12-cv-4281-O, (doc. 6).) After Olaka's second amended motion was filed, the Government filed a response on March 20, 2013. (2nd Resp. (doc. 12).) Olaka did not file a reply.

An evidentiary hearing was scheduled regarding Olaka's claim that her attorney was ineffective for failing to file a direct appeal on her behalf after she requested him to do so. On June 25, 2013, Olaka filed a motion to cancel the hearing and to dismiss this particular ineffective assistance of counsel claim. (*See* 3:12-cv-4281-O, docs. 22, 23). The hearing was cancelled.

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*

4

*v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. VOLUNTARINESS OF PLEA

Olaka first asserts that her plea was involuntary because she was not fully informed about the consequences of the plea, she was promised a particular sentence by her attorney, she did not receive a copy of her PSR until after she pled guilty, and she did not read the entire plea agreement.

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently

made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him,

6

understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

**A.   Alleged Promise**

Olaka asserts that her guilty plea was rendered involuntary because her attorney, Bassey Akpaffiong, promised her that she would receive a sentence between 24 and 30 months and would be released immediately after her sentencing if she pled guilty.

At her rearraignment, Olaka responded to questions about the voluntariness of her plea and the factual basis for it. She averred that (1) she has a Master's degree from the University of Dallas in business administration; (2) she understood that she was under oath and that she could be prosecuted for perjury if she testified falsely; (3) she understood that she had a right to plead not guilty and have a jury trial with counsel representing her; (4) she understood that by pleading guilty, she was giving up her right to a jury trial, as well as the rights to confront and cross-examine witnesses, decline to or choose to testify, and compel witnesses to testify in her defense; (5) she had read the superseding indictment and understood everything in it; (6) she was pleading guilty because she was guilty of every element of the offense; (7) no one had attempted to force her, either mentally or physically, to plead guilty, and no one had made any additional promises beyond the plea agreement to induce her to plead guilty; (8) she had discussed the sentencing guidelines with her attorney and understood that the applicable guideline could not be determined until after a PSR had been prepared; (9) she understood that the district judge alone would decide her sentence and that he had the authority in some circumstances to impose a sentence that was either more or less severe than the sentence called for by the guidelines; (10) she could not withdraw her plea if the sentence she received was more severe than she expected; (11) she understood that the statutory maximum

sentence was five years; and (12) she understood that in the plea agreement she was giving up the right to appeal except under certain circumstances. (doc. 66 at 3-21). Finding Olaka's guilty plea to be knowing and voluntary, the Court accepted it and adjudged her guilty. (*Id.* at 21-22).

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

The Fifth Circuit has recognized that a movant may seek habeas relief on the basis that her attorney made alleged promises to her, even though this is inconsistent with representations she made in court when entering her plea, if she proves :1) the exact terms of the alleged promise; 2) exactly when, where, and by whom the promise was made; and 3) the precise identity of an eyewitness to the promise. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998), *citing Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989). If a movant produces independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue. *Id.* However, when the movant's "showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in light of other evidence in the record," the Court may dispense with her allegations without an evidentiary hearing. *Id.*

Olaka has not presented any evidence other than her own self-serving statements that she pled guilty because her attorney promised that she would receive a particular sentence and that she would be able to go home after sentencing. She stated under oath at her rearraignment that she understood that the statutory maximum sentence she could receive was five years, that she had received no promise that induced her to plead guilty, that the district judge would sentence her, and that that decision would not be made until after a PSR was written and submitted by the probation department. Olaka has not overcome her own sworn statements or the record itself; both reflect that she was not coerced into pleading guilty because of the promise of a particular sentence.

**B.   Ineffective Assistance of Counsel**

Olaka also asserts that ineffective assistance of counsel rendered her plea involuntary because her attorney failed to inform her about the full consequences of her plea, allowed her to plead guilty before she knew the contents of her PSR, and did not provide her a full copy of her plea agreement.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "preju-

dice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* The second prong of *Strickland* is not satisfied by mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

While Olaka asserts that her attorney was ineffective, she has failed to establish prejudice. She asserts that her attorney did not fully advise her about the consequences of the plea, did not provide her with a full copy of the agreement, and allowed her to plead guilty without knowing what was contained in the PSR. As noted, the Court thoroughly advised her about the ramifications of her guilty plea at her plea hearing, and that a PSR had not yet been completed and would not be completed until after her plea. Furthermore, the prosecutor read part of Olaka's plea agreement to her at the plea hearing, and the Court took additional time to explain the various sections of the agreement to her. (doc. 66 at 13-17.) After she was fully admonished about the consequences of her plea and her plea agreement was read to her, she requested and was granted additional time to speak to her attorney about her guilty plea. (*Id.* at 21.) It was only after she was fully admonished about the consequences of her plea and her plea agreement, and after she was afforded additional time to speak to her attorney, that her plea was accepted. *Id.* She has therefore not shown a reasonable probability that she would not have pled guilty and would have insisted on going to trial that had

her attorney more fully explained the consequences of the plea, clearly advised her that a PSR would be prepared after a guilty plea was entered, or provided her with a full copy of her plea agreement.

Olaka's guilty plea was voluntary, she has failed to establish that counsel was deficient with respect to her plea, and these claims are therefore without merit.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Olaka also alleges that she received ineffective assistance of counsel prior to and during the sentencing stage of the proceedings. She initially also alleged a claim that she now seeks to withdraw, i.e., that her attorney failed to file an appeal on her behalf after being instructed to do so.

In order to obtain post-conviction relief due to ineffective assistance of counsel during the punishment phase of a non-capital case, a movant must satisfy the two-prong test established in *Strickland*. As noted above, she must demonstrate that counsel's performance fell below an objective standard of reasonable professional service. *Id.*, 466 U.S. at 687-88. Second, she must establish prejudice. To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice").

Olaka asserts that her attorney failed to: 1) adequately communicate with her prior to sentencing; 2) attend her pre-sentence investigation interview with her due to his illness, after being instructed to do so by the Court; 3) discuss her PSR with her or give her a copy of it, although he told Court that he had discussed it with her; and 4) inform her that her sentencing date had changed. Olaka has again failed to establish prejudice because she fails to establish that there is a reasonable probability that her sentence would have been less harsh absent these alleged failures.

While Olaka asserts that her attorney did not adequately communicate with her, discuss her

PSR with her in depth, and attend her PSR interview, she does not allege that anything in the PSR concerning her history or the charged offense is untrue. She also has not alleged how she was harmed because her sentencing date was continued. With regard to her sentence, Olaka received a three-level downward departure for acceptance of responsibility as a result of her guilty plea. The PSR calculated three enhancements to Olaka's sentence because of the failure to report income exceeding $10,000 in any year from criminal activity, because she used sophisticated means to conceal her offense, and because she abused her special skill and position of trust in preparing fraudulent tax returns for others. (PSR ¶¶ 42, 43, 44.) Defense counsel objected to two of these enhancements as well as the calculated loss amount in writing and at Olaka's sentencing hearing, and one of his objections was sustained. (doc. 67 at 5-9, 14.) After her sentence was recalculated, Olaka was sentenced at the very bottom of the sentencing range. Counsel argued for a lower sentence, and the fact that he was ultimately unsuccessful does not establish prejudice. Olaka has failed to meet the *Strickland* standard, and these claims should be denied.

As for her claim that her attorney failed to file a direct appeal on her behalf, Olaka has filed a motion, through appointed counsel, to dismiss this claim. (doc. 22). She has submitted a signed statement affirming that she wishes to withdraw this particular claim, and that she is making this decision freely and voluntarily after considering all options and with full understanding of the consequences of this decision. (doc. 23). Olaka's voluntary motion to withdraw this claim should be granted.

### V. DISTRICT COURT ERRORS

Finally, Olaka asserts that the Court lacked jurisdiction to impose the sentence she received, and that her sentence was in excess of that authorized by law. (2nd Am. Mot. at 7, 17.)

When she pled guilty, Olaka voluntarily waived her right to collaterally attack her

conviction, except for claims challenging the voluntariness of her plea and waiver, ineffective assistance of counsel, a sentence exceeding the statutory maximum punishment, or an arithmetic error at sentencing. (*See* doc. 42 at 4). Generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam), *accord United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). "A defendant's waiver of her right to appeal is not informed if the defendant does not know the possible consequences of her decision." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992).

The record reflects that Olaka understood the consequences of her appeal waiver. As such, she has waived any right to claim that the Court did not have jurisdiction to impose her sentence. She did not file a direct appeal. She has therefore waived her right to claim that her sentence exceeded the maximum punishment. Furthermore, she has presented no evidence to support her claim that the Court did not have jurisdiction over her federal criminal case or had no jurisdiction to sentence her to a term of imprisonment. Because she was sentenced to less than five years, her sentence did not exceed the statutory maximum sentence. These claims should be denied.

## VI. EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record conclusively shows that Olaka is entitled to no relief.

## VII. RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice. Olaka's motion to withdraw her claim that counsel was ineffective for failing to appeal her conviction and sentence should be **GRANTED**.

**SIGNED this 5th day of July, 2013.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE